IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                    Case No. 2:17cr65

JEROME BONEY FRAZIER,

        Defendant.

## POSITION OF THE DEFENDANT WITH RESPECT
## TO SENTENCING FACTORS

COMES NOW the Defendant, Jerome Boney Frazier, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report ("PSR") and that he has no objections to the report and states his position with respect to sentencing factors.

## THE APPROPRIATE SENTENCE IN THIS CASE

Jerome Frazier made a massive error in judgment, one he deeply regrets, when he chose to sell heroin.  He knew better, and he understands he must suffer the consequences.  A sentence of ~~seventy-two~~72 months is the appropriate consequence for a variety of reasons, but most importantly because it balances the overriding principle and mandate of § 3553(a). This mandate requires district courts to impose a sentence "sufficient, but not greater than necessary," and must "tak[e] into account the real conduct and circumstances involved in sentencing," *Gall v. United States*, 552 U.S. 38, 54 (2007), as well as the defendant's personal history and characteristics.  18 U.S.C. § 3553(a)(1).  Since the guidelines cannot do this, the Court must do so, i.e., "consider every convicted person as an individual and every case as a unique study in the human failings

1

that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52.  None of the sentencing factors are to be given greater weight than the other factors.

Mr. Frazier's calculated guidelines of 97 – 121 months' imprisonment are greater than necessary to accomplish § 3553(a)'s mandate because they fail to take into account the entire picture.  First, the nature and circumstances of the offense are less aggravating than other cases that would call for the same guideline range.  For ten months, Mr. Frazier sold heroin out of desperation, in an effort to help pay his bills and supplement his income.  He did not to it to get rich or lord power over others.  He is not a violent person.  He did not conspire with others in an effort to sell these narcotics.

Secondly, the guidelines do not take into consideration how Mr. Frazier appropriately handled his arrest, and how that behavior might be an indicator of his likelihood not to reoffend.  Mr. Frazier immediately expressed regret for his actions by doing everything he could to make things right. He cooperated fully, beyond what was necessary to receive the standard 3-level acceptance credit.  When questioned by law enforcement, he was extremely honest.  He admitted to being in possession of additional narcotics in his front pocket. PSR ¶ 9.  He even led the police to seize additional drugs in is house and consented to its search. PSR ¶¶ 9-10.  Indeed, even assuming law enforcement would have eventually seized what was found in his pocket and at his home, his own words and honesty increased the drug weight to be used against himself eighteen-fold.  And, as he expressed in paragraph sixteen of the PSR, and undisputed by law enforcement, he had plans to get away from selling narcotics around the time of his arrest.

Finally, the probation officer's calculated advisory guideline range of 97-121 months' imprisonment over-represents the seriousness of both his conduct and criminal history.  With respect to his criminal history, Mr. Frazier is a category II, but he only has one prior adult

conviction, which is a 1998 Conspiracy to Distribute Heroin.  He was a released from prison in September of 2001, more than 16 years ago.  However, because he was honest with law enforcement about when he began selling heroin, the relevant conduct falls just *three months* within the fifteen-year time period required under U.S.S.G. § 4A1.2(e).  Thus, he receives the same criminal history category as someone who was convicted of a similar offense much more recently, rather than 16 years ago.  And again, *but for* his honesty in stating that the start date of his sale of narcotics was June 2016 (rather than October 2016, for example), he would have been placed in criminal history category I.  As the Fourth Circuit explained in *United States v. Atkins*, 937 F.2d 947 (4th Cir. 1991):

> "Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses with a reasonable degree of precision, mathematically accurate evaluation of the countless possible permutations of criminal history, involving offenses high and petty committed in numerous jurisdictions, would be at best unwieldy.  The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score.

*Atkins*, 937 F.2d at 952.   Accordingly, Mr. Frazier submits that his criminal history is overrepresented.  For the reasons above and because he is just over the threshold of categories, a calculated guideline range using a criminal history category I is more appropriate here.

Mr. Frazier's converted drug weight also sits at the low end of the range for his calculated base offense level.  Probation calculates his drug weight, based almost entirely on his own estimate of when he began selling, at just above 3,000 kilograms, specifically 3,379 kilograms.  This calculated drug weight corresponds to a base offense level 32, which covers drug weights between 3,000 kilograms to 10,000 kilograms of marijuana.  Mr. Frazier's estimates place him very much

at the low-end of that range, yet, produce the same guideline range as someone who was selling the equivalent of 10,000 kilograms of marijuana.

For all of the above reasons, and taking into consideration the arguments made below, the PSR's calculated guidelines range of 97-121 months' imprisonment is simply greater than necessary to achieve the mandate of § 3553(a).  Such a range does not take into account the specifics of this particular case and this particular person.  Instead, a guideline range of 70 to 87 does (total offense level 27, criminal history category I).  As such, the defense requests a sentence of 72 months' imprisonment.

<u>**Nature and Circumstances of the Offense**</u>

The offense is Distribution of Heroin. The "offense conduct" section of the PSR and the Statement of Facts sets forth the facts and circumstances of the offense and Mr. Frazier's activities. The Court should also take into consideration his conduct described above.

<u>**History and Characteristics of Mr. Frazier**</u>

Jerome Boney Frazier was born in Queens, New York in 1971.  His father was absent most of his life so he was raised primarily by his mother.  PSR ¶ 43.  Despite his mother working and providing for the family, there were no doubt difficult times.  Growing up in Queens in the 1980s was "rough," both because of what he faced in the neighborhood as well as in his home.  There were times when the electricity was cut off and there was no running water.  *Id.*  Jerome also recalls a strict disciplinary environment, where his mother and older brothers used belts and switches, shoes, and indeed "anything within reach" to punishment him. *Id.*

Jerome's father, Daniel Staley, provided little in the way of financial assistance or positive role modeling.  Not only was he rarely physically present, except maybe holidays, he had a history of criminal activity.  PSR ¶ 46.  In fact, Mr. Staley died in prison when Jerome was a teenager. *Id.*

Family is extremely important to Jerome. He has regular contact with his remaining siblings, and the death of the others weighs heavily on him. His sister Paula spoke at length with probation, and described the importance of family to both of them. She also describes Jerome as a "one of a kind, loving person, and everybody in the family loves him. He shows love and nobody can ever say anything bad about him. He has a heart of gold and will give you the shirt off of his back if he could, that's the type of person that he is." PSR ¶ 47. This comment comes as no surprise to the people who know him best.

Jerome has five living children. He is actively involved in each of their lives and has a good relationship with each of the child's mother. PSR ¶ 48. Even though he was not around for the older children as much when they were younger, he does his best to provide for the younger ones financially, and he supports them all emotionally. His eldest daughter, Zakiya Credle, now age 28, explained to probation how Jerome tries to make up for the times when he was absent when she was a child. "He is good with my kids, whatever he didn't do with me or my brothers, he will try and do with my kids (and her younger siblings), so he tries to make up for that. When I need advice, or someone to talk to, I can come to my dad. He wasn't there as much when we (his adult children) were younger, but judging from his childhood, I can understand why. When we need anything, he is definitely there." *Id.*

Jerome is currently in a romantic relationship with Marcella Rosenboro, the mother of his youngest daughter. She describes him as a "family person," and says "he likes to help people, and I think that weighs on him because he can't do as much as he wants to do." PSR ¶ 49. She comes to Norfolk nearly every weekend and Jerome provides what money he can for her and their daughter on a regular basis. PSR ¶ 48. Their plan is to get married as soon as this case resolves.

## Seriousness of the Offense/Promoting Respecting
## for the Law/Providing Just Punishment

A sentence of 72 months' imprisonment would reflect the seriousness of the offense, promote respect for the law and provide just punishment to Mr. Frazier. This is a significant sentence for him now, at this point in his life, when he has so many positive things going for him. He has worked hard to rebuild his life since his release from prison in 2001, and risks losing a great deal with any sentence of incarceration. He has a meaningful full-time job working construction. He has a good relationship with his children and their mothers.  He has the unwavering support of his sister, his girlfriend, and his children.  The requested sentence is fair punishment given all of the factors to be considered.

Additionally, following his release from prison, Mr. Frazier will be on a period of supervised release with the probation office of this Court. While the probation office will be a source of structure and a resource for him, supervised release will still be a restriction on his liberty- and thus continued punishment.

## Affording Adequate Deterrence and Protecting the Public from Mr. Frazier

This Court will undoubtedly be contemplating the fact that Mr. Frazier previously served approximately 70 months for his prior conviction and likely consider whether a sentence in excess of that is necessary to deter him from reoffending and protect the public.  While this is certainly a worthy inquiry, the answer is "no."  Mr. Frazier is at a much different time in his life and he has much more to lose than he did twenty years ago when he received a 70 month sentence.  He is now an involved father, has a loving girlfriend, has a stable, secure job and he is respected at work. Since his release on bond in April of 2017, he has been a model citizen.  He complies with his conditions of bond, providing paystubs and maintaining contact with his probation officer, and is

6

remaining drug free and arrest free.  In many ways, a sentence to 72 months now (which *is* greater than what he received last time), constitutes a far greater punishment to him than 70 months did twenty years ago, especially given all the collateral consequences he will face upon his release from incarceration.

**Providing Needed Educational/Vocational Training/**
**Medical Care/Correctional Treatment**

Jerome did not graduate from high school, rather, he withdrew from Springfield Gardens High School in Queens, New York while in the 9th grade.  He had a difficult time in school, reporting that he was in special education classes from the fourth grade until he stopped attending. PSR ¶ 75. Despite his struggles with reading and reading comprehension, even to this day, he worked hard and obtained his GED while in prison.  PSR ¶ 56.  He has managed to adapt in the work place as well, asking his colleagues and boss for help when reading is necessary.

Jerome has secured a good job as a supervisor at C.M Nobles Construction, and is respected by his employer and colleagues. He works full-time, and even overtime when needed. PSR ¶ 57. His boss describes him as "an outstanding supervisor and a great asset to the company. We at CM Noble Corporation hope to continue to have Jerome Staley as part of our team."  *See letters*, attached as Exhibits A and B.  Jerome is currently helping with several hospital expansions in the Hampton Roads area. He is proud of his work and he hopes to return there when released from prison.

The sentence sought by the defense is sufficient to provide him with needed educational and vocational training.

**Unwarranted Sentencing Disparity**

Imposition of the sentence sought by the defense will not lead to unwarranted sentencing disparity based upon the arguments and positions set forth in this pleading.

7

## **Conclusion**

For the reasons advanced above, Jerome Boney Frazier respectfully moves for a sentence of 72 months' imprisonment.  Such a sentence is sufficient to comply with the factors set forth in 18 U.S.C. § 3553(a), as it takes into account the entire picture and the entire person. The defense also respectfully requests that the Court recommend to the Bureau of Prisons that he be incarcerated in a prison as close to this geographic area as possible and that he be allowed to self-surrender.

Respectfully submitted,

JEROME BONEY FRAZIER

By_____/s/_____

Amanda C. Conner, Esquire
VSB # 88317
Assistant Federal Public Defender
Attorney for Jerome Boney Frazier
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
amanda_conner@fd.org

## **CERTIFICATE OF SERVICE**

I certify that on this 20th day of September, 2017, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:


William David Muhr
United States Attorney's Office
101 W Main St
Suite 8000
Norfolk, VA 23510
(757) 441-6331
Fax: 757-441-6689
Email: Bill.Muhr@usdoj.gov


                                        _____/s_____

                                        Amanda C. Conner
                                        VSB # 88317
                                        Assistant Federal Public Defender
                                        Office of the Federal Public Defender
                                        150 Boush Street, Suite 403
                                        Norfolk, Virginia 23510
                                        (757) 457-0816
                                        (757) 457-0880 (telefax)
                                        amanda_conner@fd.org